**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **DIVERSIFIED POWER** | * | |
| **INTERNATIONAL, LLC,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **VS.** | * | **Civil Action No. _____** |
| | * | |
| **ARCARIUS, LLC,** | * | |
| **QUEEN FUNDING, LLC and** | * | |
| **RAM CAPITAL FUNDING, LLC** | * | |
| | * | |
| **Defendants** | * | |

# COMPLAINT

This is an action to recover the value of fraudulent transfers, to impose a constructive trust, to recover under a theory of unjust enrichment, to recover for money had and received and for money damages.

## PARTIES

1. Plaintiff Diversified Power International, LLC ("Diversified") is a Tennessee limited liability company with offices located at 414 Century Court, Piney Flats, Tennessee.

2. Defendant Arcarius, LLC ("Arcarius") is a Delaware limited liability company. Its registered agent for service of process is Blumberg Excelsior Corporate Services, Inc., 1013 Centre Road Suite 403S, Wilmington, Delaware 19805.

3.     Defendant Queen Funding, LLC ("Queen Funding") is a New Jersey limited liability company with principal offices at 101 Chase Avenue, Suite 207-208, Lakewood, New Jersey 08701.  Its registered agent for service of process is Malka Keller, 101 Chase Avenue, Suite 101, Lakewood, New Jersey 08701.

4.     Defendant Ram Capital Funding, LLC ("Ram Capital") is a New Jersey limited liability company with principal offices at 101 Chase Avenue, Suite 202, Lakewood, New Jersey 08701.  Its registered agent for service of process is Tzvi Reich, 211 Boulevard of Americas, Suite 205, Lakewood, New Jersey 08701.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as complete diversity of citizenship exists between Plaintiff and Defendants including all members of Plaintiff and all members of Defendants and more than $75,000 is at issue, exclusive of interest and costs.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims at issue occurred in the Eastern District of Tennessee.

## STATEMENT OF FACTS

6.     The Plaintiff is engaged in the business of the manufacture and sale of batteries, battery chargers, power supplies, environmental products and specialty automotive electronics for various industries.

7.     The Defendants provide various forms of funding and/or extensions of credit to their customers or clients primarily over the Internet.  This funding includes factoring of account receivables and contract rights, account receivable financing or other forms of working capital loans and/or extensions of credit.

8.     On or about June 8, 2018, Plaintiff entered into a contract with P & HR Solutions, LLC ("P & HR") to provide certain payroll related services.  P & HR is a Tennessee limited liability company with principal offices located in Knoxville, Tennessee. The services P & HR agreed to provide Plaintiff included the following: preparation of Plaintiff's payroll, preparation and maintenance of payroll journals, compute the applicable payroll deductions, prepare detailed invoices with breakdown of payroll and the amounts due, processing of Plaintiff's payroll, compute and remit to the applicable taxing authorities Plaintiff's payroll and applicable state and federal unemployment taxes, and complete, file and sign Plaintiff's payroll tax returns.  P & HR agreed to provide such services in consideration of a fee.

9.     For each payroll period that Plaintiff's contract with P & HR was in place, Plaintiff provided P & HR with its payroll report (employee names and hours worked) for the particular payroll period.  From that information, P & HR would generate an itemized invoice that would include the amount of the payroll due for that period; the employee (payroll) federal tax to be withheld; the employee social security tax to be withheld; the employee Medicare tax to be withheld; the employee state and local tax to be withheld; the employer social security, Medicare, state unemployment and federal unemployment tax to be withheld; and any applicable individual employee payroll deductions such as

3

child support or garnishments. The weekly or bi-monthly invoice submitted by P & HR contained a total of the amounts due from Plaintiff to P & HR which represented the sum of the above items together with the fee due P & HR.

10.     Plaintiff would then fund the total amount set forth on the P & HR invoice by making the funds available in Plaintiff's operating account. P & HR would then withdraw the funds from Plaintiff's operating account by ACH draft and deposit such funds into a P & HR operating account maintained at Regions Bank, account number XXXXXX5800 (the "P & HR Operating Account").

11.     During the period of Plaintiff's contractual relationship with P & HR, P & HR agreed to pay the Internal Revenue Service (the "IRS") the Plaintiff's payroll tax liability from the funds provided by Plaintiff and deposited into the "P & HR Operating Account". In addition, upon receipt of Plaintiff's funds, P & HR issued checks payable to Plaintiff's employees and such checks were drawn directly from another P & HR deposit account.

12.     During the time that Plaintiff's contractual relationship with P & HR was in effect and unbeknownst to Plaintiff, P & HR had various loans or funding relationships with the Defendants as well as other providers of short-term credit. Upon information and belief, the Defendants made deposits in the form of credit advances into the P & HR Operating Account and then subsequent withdrawals therefrom by ACH draft or wire transfer in payment of such advances. These deposits and withdrawals from the P & HR Operating Account occurred routinely, that is, on at least a weekly and sometimes a daily basis.

13.    The *Internal Revenue Code* requires employers to deduct withholding taxes and pay FICA (941 payroll taxes) and FUTA (federal unemployment taxes) on employees' wages.  See 26 U.S.C. § 3402, § 3102 and § 3301.

14.    The *Internal Revenue Code* allows an employer to designate agents to act on behalf of the employer to perform duties such as payment of employee wages and payment of the company's payroll taxes.  See 26 U.S.C. § 3504.  Under this statute, if compensation of an employee employed by an employer is paid by a fiduciary or agent of the employer that has control, receipt, disposal or custody of such wages or compensation, such fiduciary or agent is subject to the same laws applicable to the employer for such acts.  See also 26 C.F.R. § 31. 3504-1(a).  Inasmuch as P & HR had actual control over the funds paid by Plaintiff for payroll and related taxes and P & HR actually paid the wages of Plaintiff's employees, then P & HR had an independent legal and tax obligation to the IRS to pay Plaintiff's payroll taxes that were due the IRS.

15.    Section 7501 of the *Internal Revenue Code* provides:

> Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.

26 U.S.C. § 7501.

16.    Plaintiff avers that the trust imposed by 26 U.S.C. § 7501 is not a trust over particular funds but over a particular amount that is due from the taxpayer.  Section 7501 creates a trust in an abstract amount, a dollar figure not tied to any particular asset, rather than in the actual dollars withheld.  See Begier v. United States, 496 U.S. 53, 110 S. Ct.

2258.  This trust in effect "floats" over the funds held by the taxpayer or in this case, the funds held by P & HR in the P & HR Operating Account.

17.     Plaintiff avers that when it transferred funds to P & HR for purposes of the payment of the Plaintiff's trust fund obligations to the IRS, P & HR never acquired equitable title to such funds and such funds were held by P & HR in the P & HR Operating Account in trust for the benefit of the Plaintiff and for the benefit of the IRS pursuant to 26 U.S.C. § 7501, to the extent of the taxes that were owed.  Plaintiff, therefore, avers that any subsequent transfer of such funds to the Defendants were subject to or encumbered by such trust for the benefit of Plaintiff and for the benefit of the IRS, to the extent of the taxes owed.

18.     During each payroll period that Plaintiff's contract with P & HR was in effect, P & HR withdrew the necessary funds from Plaintiff's operating account by ACH draft to meet Plaintiff's payroll tax obligations to the IRS and other payroll related tax obligations to other taxing authorities.  These funds were withdrawn from Plaintiff's operating account by P & HR and deposited by P & HR in the P & HR Operating Account.

19.     Plaintiff avers that a floating trust was imposed on the funds P & HR withdrew from Plaintiff's operating account and deposited in the P & HR Operating Account and such trust attached to any funds thereafter on deposit in the P & HR Operating Account, to the extent of the taxes that were owed to the IRS.

20.     Plaintiff avers that P & HR failed to remit such funds to the IRS consistent with its contractual and fiduciary obligations and inconsistent with the trust imposed on

6

such funds. Instead, P & HR utilized such funds for the benefit of itself and its creditors including transfers of money to the Defendants. Plaintiff avers that P & HR did not have equitable title to the funds utilized to pay the Defendants and such funds were subject to a trust for the benefit of the Plaintiff and for the benefit of the IRS at the time of their transfer to the Defendants.

21.     In July of 2019, Plaintiff was informed by the IRS that the following payroll (section 941) taxes were reported to the IRS but remained unpaid for the following tax periods in 2018 and 2019:

| Time Period | Tax Due | Penalties & Interest[1] | Total Due |
|---|---|---|---|
| 3rd Qtr. 2018 | $125,953.22 | $58,849.49 | $184,802.71 |
| 4th Qtr. 2018 | $45,.372.04 | $14,467.09 | $59,839.13 |
| 1st Qtr. 2019 | $30,106.73 | $6,585.86 | $36,692.59 |
| 2nd Qtr. 2019 | $96,159.83 | | $96,159.83[2] |
| | | Total: | $377,494.26 |

The total of payroll (section 941) taxes due for each of the above periods were tendered by Plaintiff and held by P & HR in the P & HR Operating Account in trust for the benefit of Plaintiff and in turn, the IRS.

22.     Plaintiff further avers that the IRS has issued notices of intent to levy to Plaintiff and filed tax liens against the Plaintiff's assets and properties to secure payment

---

[1]  These amounts were computed as of September 1, 2019.
[2]  The penalties and interest for this tax period has yet to be computed.

of such tax liens. Such claims made by the IRS or lien filed by the IRS result or will result in the Plaintiff paying twice for the same tax obligation. The filing of such liens by the IRS has created substantial financial hardships for the Plaintiff including the threatening of Plaintiff's credit relationship with its existing lenders.

23. Based on the records of the P & HR Operating Account, Plaintiff made the following deposits or transfers into such account for the following time periods designated for the payment of Plaintiff's payroll and payroll related taxes with the following amounts designated for payroll taxes:

| Time Period | Amount of Deposits | Amounts Designated for Payroll Taxes |
|---|---|---|
| 3rd Qtr. 2018 | $612,751.73 | $125,953.22 |
| 4th Qtr. 2018 | $638,053.53 | $130,538.28 |
| 1st Qtr. 2019 | $544,972.47 | $108,843.52 |
| 2nd Qtr. 2019 | $229,629.96 | $113,103.20 |

24. During the same time periods, the Defendants received the following transfers from the P & HR Operating Account either by direct transfer or ACH draft:

| Defendant | Time Period | Amount |
|---|---|---|
| Arcarius | July 2018 | $89,396.58 |
| | August 2018 | $97,910.54 |
| | September 2018 | $80,882.62 |
| | October 2018 | $25,952.72 |

8

| | | |
|---|---|---|
| Queen Funding | October 2018 | $15,960.00 |
| | November 2018 | $87,780.00 |
| | December 2018 | $79,800.00 |
| | January 2019 | $87,780.00 |
| | February 2019 | $75,810.00 |
| | March 2019 | $103,880.00 |
| | April 2019 | $131,978.00 |
| | May 2019 | $11,998.00 |
| Ram Capital | August 2018 | $109,980.00 |
| | September 2018 | $109,980.00 |
| | October 2018 | $206,977.00 |
| | November 2018 | $197,978.00 |
| | December 2018 | $188,979.00 |
| | January 2019 | $116,987.00 |

25.    Plaintiff avers that each of the transfers to the Defendants that comprised the amounts set forth in paragraph 24 above were fraudulent in nature in that (a) the funds represented in part trust monies for the benefit of Plaintiff and in turn, the IRS, (b) the funds represented in part monies misappropriated from the Plaintiff, (c) the Defendants benefited from the fraudulent conduct of P & HR to Plaintiff, and (d) the Defendants were paid with funds that did not rightfully belong to P & HR but were trust funds impressed with a lien for the payroll taxes due the IRS.

9

26.     Plaintiff avers that is a judgment creditor of P & HR by virtue of judgment obtained against it in the amount of $377,494.26 (the "Judgment") in the action styled: Diversified Power International, LLC v. P & HR Solutions, LLC and Debra Fergerson, Civil Action No. 19-ck-42079(m) (Sullivan County Chancery).   A copy of the Judgment is attached hereto as **Exhibit No. 1** and incorporated herein by reference.

### COUNT I
### Avoidance of Transfers by P & HR to Defendants as Fraudulent Under the *Tennessee Uniform Fraudulent Transfer Act*

27.     The allegations of paragraphs 1 – 26 of the complaint are adopted and incorporated herein by reference.

28.     Plaintiff avers that it is a "creditor" of P & HR under the *Tennessee Uniform Fraudulent Transfer Act* as it is a person or entity that holds a claim against P & HR.

29.     Under T.C.A. § 66-3-305(a), a fraudulent transfer occurs when the debtor makes the transfer "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:  (A)  Was engaged or was about to engage in a business. . . for which the remaining assets of the debtor were unreasonably small in relation to the business . . . ; or (B)  Intended to incur. . . debts beyond the debtor's ability to pay as they became due".

30.     Plaintiff avers that the transfers by P & HR from the P & HR Operating Account to the Defendants at issue in this case and as set forth in paragraph 24 hereof were made with the actual intent to hinder, delay or defraud Plaintiff, as an existing and

10

future creditor of P & HR, in that, without limitation, (a) the transfers or a portion thereof represented trust funds for the benefit of the Plaintiff and in turn, the IRS; (b) P & HR's non-payment of Plaintiff's tax obligations was concealed; (c) P & HR was insolvent or became insolvent shortly after the transfers to the Defendants were made; and (d) the transfers occurred shortly before or shortly after substantial debts were incurred by P & HR to the Defendants.

31. Alternatively, Plaintiff avers that P & HR did not receive reasonably equivalent value in exchange for the transfers to the Defendants and at the time of such transfers, P & HR was engaged in a business that the assets were sufficiently small in relation to the liabilities of such business, or alternatively, P & HR intended to incur debts beyond the ability of P & HR to pay.

32. Plaintiff, therefore, avers that the transfers to the Defendants at issue and set forth in paragraph 24 hereof were fraudulent under T.C.A. § 66-3-305(a)(1) or T.C.A. § 66-3-305(a)(2) and subject to avoidance.

33. Tennessee Code Annotated § 66-3-308 provides in pertinent part:

> (a) In an action for relief against a transfer or obligation under this part, a creditor, subject to the limitations in § 66-3-309, may obtain:

> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim. . .

> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure. . .

> (C) Any other relief the circumstances may require.

11

> (b) If a creditor has obtained a judgment on a claim against
> the debtor, the creditor, if the court so orders, may levy
> execution on the asset transferred or its proceeds.

34.     In addition, T.C.A. § 66-3-309 provides that a creditor may recover a judgment for the value of the asset transferred and that judgment may enter against "[t]he first transferee of the asset or the person for whose benefit the transfer was made" or against "[a]ny subsequent transferee other than a good-faith transferee or obligee who took for value or from any subsequent transferee or obligee". T.C.A. § 66-3-309 (b)(1) – (2).

35.     Plaintiff, therefore contends that pursuant to the foregoing provisions of the *Tennessee Uniform Fraudulent Transfer Act*, it is entitled to recover a judgment directly from the Defendants for the value of the monies transferred as subsequent transferees from P & HR, to the extent of Plaintiff's claim against P & HR.

36.     Plaintiff avers that it was prejudiced by P & HR's transfers to the Defendants in that such transfers deprive Plaintiff of its right to subject the monies transferred to payment of Plaintiff's indebtedness or obligations to the IRS and P & HR has failed to retain sufficient money or property to satisfy Plaintiff's obligations to the IRS and other taxing authorities.

37.     Plaintiff further avers that the Defendants are not good faith transferees of the transfers at issue in that (a) the monies transferred to the Defendants from P & HR represent monies in which P & HR did not hold equitable title, and (b) the monies transferred to P & HR were subject to a trust for the benefit of Plaintiff and in turn, the

12

IRS.  Plaintiff further avers, upon information and belief, that Defendants knew or should have known that P & HR was utilizing trust funds to satisfy P & HR obligations to the Defendants.

38.     Plaintiff, therefore, avers that it is entitled to a judgment against the Defendants, jointly and severally, in an amount equivalent to the monies transferred to the Defendants from the P & HR Operating Account, to the extent necessary to satisfy Plaintiff's obligations or indebtedness to the IRS and other taxing authorities.

<u>**COUNT II**</u>
<u>**Constructive Trust**</u>

39.     The allegations of paragraphs 1 – 38 of the complaint are adopted and incorporated herein by reference.

40.     Plaintiff avers that the P & HR was guilty of fraud and a breach of its fiduciary duty to Plaintiff by failing to pay the IRS the Plaintiff's payroll tax obligations from the monies paid by the Plaintiff to P & HR for that purpose.  Instead, P & HR used such funds for its benefit and the benefit of the Defendants contrary to P & HR's legal obligation.

41.     Plaintiff avers that P & HR held such funds in trust for the benefit of Plaintiff and/or the IRS, the rightful owners thereof.

42.     Plaintiff avers that the Defendants, the holders of such funds, should not be entitled to retain them as to do so would enable the Defendants to be unjustly enriched at the expense or to the detriment of the Plaintiff.

13

43.     Plaintiff, therefore, avers that the Court in order to satisfy the demands of justice and to prevent unjust enrichment, should impose a constructive trust on the funds in possession of the Defendants, jointly and severally, and that the Court order the Defendants to hold such funds for the benefit of the Plaintiff or the IRS, the rightful owners, in an amount sufficient to satisfy Plaintiff's payroll tax obligations to the IRS and other payroll related tax obligations to other taxing authorities.

## COUNT III
## Unjust Enrichment

44.     The allegations of paragraphs 1 – 43 of the complaint are adopted and incorporated herein by reference.

45.     Plaintiff avers that it does not have a contract with the Defendants or any of them.

46.     Plaintiff avers that the Defendants, jointly and severally, had a benefit conferred upon them by the Plaintiff in the form of monies paid to them that were in the form of trust funds due the IRS for the Plaintiff's payroll tax obligations; that the Defendants, jointly and severally, appreciated such benefit by retaining such funds; and that it would be inequitable for the Defendants, jointly and severally, to retain the benefit of such funds without the payment to the Plaintiff for the value thereof.

47.     Plaintiff, therefore, avers that it is entitled to recovery from the Defendants, jointly and severally, a sum equal to Plaintiff's tax obligations to the IRS and other taxing authorities based on a claim of unjust enrichment.

14

## <u>COUNT IV</u>
## <u>Money Had and Received</u>

48.     The allegations of paragraphs 1 – 47 of the complaint are adopted and incorporated herein by reference.

49.     Under Tennessee law, an action for money had and received is available in cases where one person has received money or its equivalent under circumstances that the recipient ought not to retain it and based on principles of equity, the money belongs to another.

50.     Plaintiff avers that it is entitled to recover from the Defendants, jointly and severally, based on an action for money had and received on the grounds that the Defendants received money under circumstances that in equity and good conscience, the Defendants ought not to retain such funds and based on justice and fairness, the funds belong to the Plaintiff for the benefit of the IRS.

51.     Plaintiff further avers, upon information and belief, that the Defendants knew or should have known that the funds they received from P & HR that were earmarked for Plaintiff's payroll taxes were misappropriated by P & HR.  As a result, Defendants' receipt of such funds was wrongful, regardless of any consideration Defendants may have provided.

52.     Plaintiff, therefore, avers that it is entitled to a judgment against the Defendants, jointly and severally, in an amount sufficient to satisfy Plaintiff's tax liability

to the IRS arising from P & HR's fraudulent conduct based on the theory of money had and received.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Diversified Power International, LLC, prays for relief as follows:

1.      That proper process be issued and Defendants be required to respond to this complaint within the time permitted by law;

2.      That Plaintiff have and receive a judgment against the Defendants, jointly and severally, in the amount of $377,494.26 together with such interest or penalties that may accrue thereon;

3.      That the Court impose a constructive trust on monies in the hands or under control of the Defendants, jointly and severally, in an amount sufficient to satisfy Plaintiff's payroll tax and other tax obligations to the IRS and other related payroll tax obligations to other taxing authorities;

4.      That Plaintiff be awarded prejudgment interest pursuant to T.C.A. § 47-14-123, to the extent of any judgment awarded Plaintiff from the date of the filing of this action to the date of judgment;

5.      That Plaintiff be awarded its costs and expenses including its reasonable attorney's fees; and

6.    That the Plaintiff be awarded such further general or specific relief as the Court deems proper.

HUNTER, SMITH & DAVIS, LLP

By:    *s/Mark S. Dessauer*_____
Mark S. Dessauer, Esq.
TN BPR NO. 010421
Post Office Box 3740
Kingsport, Tennessee 37664
(423) 378-8840; Fax: (423) 378-8801
dessauer@hsdlaw.com
Attorney for Plaintiff
Diversified Power International, LLC